ROBERT H. McCARTER, attorney-general, respondent,

*v.*

LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY et al., appellants.

[Argued November 17th, 1915. Decided June 19th, 1916.]

1. Under the act of 1867 (*P. L. 1867 p. 251*) tidelands belonging to the state were granted to a canal company under an agreement that the property should be held subject to specified public uses, and that at the expiration of the charter of the company the lands granted, with the improvements, should revert to the state. By the act of 1871 (*P. L. 1871*

*p. 44*) the canal company leased the granted land and its franchises in perpetuity to a railway company. Thereafter the riparian commissioners without authority conveyed the land absolutely to the railroad company. —*Held*, that, even if it be conceded that the lease destroyed the state's reversionary interest in the land, yet, as that land was subject to public easements, the state is entitled to have an unauthorized conveyance which destroyed such easements decreed to be null and void.

2. Whether a lease of tidelands made by the state's grantee under the act of 1871 (*P. L. 1871 p. 44*) destroyed the state's reversionary interest, should not now be determined as it is not material to the case at bar, and as there can be no reverter for practically sixty years.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens.

*Mr. Gilbert Collins,* for the appellants.

*Mr. John W. Wescott,* attorney-general, and *Mr. Herbert Boggs,* assistant attorney-general, for the state.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The attorney-general, under authority conferred for the purpose by "An act to compel the determination of title to riparian lands and lands under water in which the state claims an estate in remainder, or reversion, and to quiet the title to the same" (*P. L. 1907 p. 96*), filed an information for the purpose of testing the validity of a conveyance made July 12th, 1889, by the riparian commissioners to the Lehigh Valley Railroad Company, purporting to vest in the grantee the fee-simple absolute of certain lands under the waters of the Hudson river, and known as the Tidewater Basin. The case having been heard upon the pleadings and proofs, it was ordered, adjudged and decreed that the deed which was attacked by the information "was executed and delivered without any legal warrant or authority; that it is *ultra vires,* and shall be set aside and declared void and of no effect, and the title of the state to the reversionary interest and estate in the said lands and premises shall be free and clear, and

freely and clearly acquitted and discharged of and from all right, title and interest, claim and demand of the several defendants, and each of them, arising or growing out of said deed of July 12th, 1889, and free and clear of any cloud or uncertainty cast upon the title of the state by the said deed," upon certain terms and conditions subsequently set forth in the decree. From this decree the defendant appeals.

The sole question presented by the pleadings was the validity of the conveyance of July 12th, 1889; and the only matter to be determined on the appeal is whether the decree adjudging it to be null and void was justified under the law and the facts.

The land involved in the controversy was granted in 1867 to the Morris Canal and Banking Company by a special act of the legislature approved March 14th of that year. *P. L. 1867 p. 251.* This grant described the *locus in quo* by metes and bounds, and was made upon condition that the property granted should be subjected to certain specified public uses during the continuance of the charter of the grantee company, and that at the expiration thereof the lands ˙granted, with the improvements thereon, should revert to the state on the same terms and conditions provided in the original charter of the company with relation to its canal, and the appurtenances thereto. The conveyance made by the riparian commissioners, under date of July 12th, 1889, granted not only the tract of land described therein, but the right and privilege of excluding the tidewater therefrom by filling in, or otherwise improving the same, and also the right to appropriate this land to the exclusive private use of the grantee.

We agree with the learned vice-chancellor that no power to make such a conveyance (that is, a conveyance extinguishing the public user reserved under the special grant of the legislature made in 1867) was vested in the riparian commissioners, either by the supplement to the Riparian act of 1869, or by any subsequent legislation, and approve the reasons set forth in his opinion in support of this conclusion.

It necessarily follows, as a result of this finding, that the state is entitled to a decree declaring the deed in controversy to be null and void.

And this is so without regard to the effect which the act of 1871 (*P. L. 1871 p. 44*), authorizing the Morris Canal and Banking Company to lease its property and franchises in perpetuity to the Lehigh Valley Railroad Company, and the subsequent execution of the lease pursuant to that authority has, upon the reversionary interest in the canal and its appurtenances, reserved to the state by the charter of the company, and the various supplements thereto; for even if that reversionary interest had been entirely wiped out thereby, as the appellants contend, this fact could not operate to breathe life into an absolutely unauthorized conveyance made by the board of riparian commissioners, the purport of which was to destroy the public easements, reserved by the state in the grant of 1867, in the property attempted to be conveyed.

It has seemed to us, therefore, unnecessary, for the purpose of determining the subject-matter of this litigation, to consider what effect the statute of 1871, and the lease thereunder, had upon the reversionary interest of the state in the property of the lessor company.  Being unnecessary, the inadvisability of an expression by this court at this time upon the subject seems to us clear, when it is remembered that the right of the state to take over the property (if such right shall then exist) does not become a present one until the year 1974, a period nearly sixty years distant from the date of this deliverance.  The wisdom of leaving the subject to the untrammeled decision of the judges who shall then constitute our courts will not, we think, be challenged.

It may be thought that the language of the decree recited in the beginning of this opinion, viz., that the title of the state to the reversionary interest and estate in the *locus in quo* shall be free and clear from all right or claim of the defendants arising out of the deed of 1889, and free and clear of any cloud or uncertainty cast upon the title of the state by that deed, requires a consideration of the matter just adverted to—that is, that an affirmance of the decree involves an approval of the view expressed by the learned vice-chancellor upon the matter.  This, however, is not so.  If the effect of the lease was to create an

estate in perpetuity in the lessee, as the appellants contend, and if the act of 1871 authorized its creation, nevertheless, that estate was a conditional one, dependent upon the performance by the lessee of the various covenants and other provisions of the lease binding upon it, and a failure of such performance will terminate the lease at the option of the lessor. It is so expressly provided by paragraph 17 of that instrument. The effect of such a termination, if it shall occur, will be to revest in the lessor the canal and its appurtenances, subject to the state's reversionary right therein, if such revesting shall occur prior to the expiration of the time limit fixed in the canal company's charter for the exercise of the state's right to take over the same. The most that can be said, therefore, in favor of the appellant's claim, is that the lease does not work an extinguishment of the state's right of reversion, but changes it from an absolute to a conditional one, the condition being that the lease shall come to an end by the act of the parties to it, during the term fixed for the exercise, by the state, of its reversionary right, or, perhaps, after the expiration of that term.

The state, therefore, was entitled to have a decree which not only adjudged the deed of 1889 to be null and void, but also that its reversionary interest, whether absolute or contingent, in the canal and its appurtenances, should be declared freed and cleared from all claim and demand of the appellants arising under that deed.

The decree under review will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, WILLIAMS—11.

*For reversal*—None.