The bill of complaint was filed by the Attorney-General under the provisions of R.S. 2:76-46 et seq. It seeks to set *Page 637 
aside a grant of riparian lands in the Borough of Edgewater, Bergen County, made by the Board of Riparian Commissioners and the Governor on September 25th, 1901, to John M. Goetchius, on the grounds of fraud, error and mistake.
The only answering defendant is the Borough of Edgewater which claims the lands by virtue of a final decree of this court adjudging that the other defendants named in this suit stand foreclosed of all right of redemption in and to certain lands including the lands under water which are the subject-matter of this suit. The State of New Jersey was not a party to the foreclosure under which the Borough of Edgewater claims its title.
The grantee, John M. Goetchius, died in August, 1904. His heirs were joined in this bill as parties defendant. They did not answer and a decree pro confesso was entered against them.
This cause was submitted to me upon a stipulation of facts and briefs. The stipulation is practically a restatement of the allegations in the pleadings. The stipulation, among other things, contains the following:
"It is further stipulated and agreed that the question before the court is as follows:
"Does the Borough of Edgewater have title by its bill to foreclose in the Court of Chancery to foreclose the right of redemption of the defendants or does title reside in the State of New Jersey by reason of the allegations that the original title was obtained by John M. Goetchius by fraud in this bill?"
In 1869, the legislature passed an act, chapter 383, P.L.1869 (R.S. 12:3-5), entitled "Supplement to an act entitled `An act to ascertain the rights of the state and of riparian owners in the lands lying under the waters of the bay of New York and elsewhere in this state,' approved April eleventh, eighteen hundred and sixty-four." Section 4 of said act provides:
"That in case any person or corporation who by any legislative act, is a grantee or licensee, or has such power or authority, or any of his, her or their representatives or assigns shall desire a paper capable of being acknowledged and recorded, made by and in the name *Page 638 
of the state of New Jersey, conveying the land in the proviso to the third section mentioned whether under water now or not, and the benefit of an express covenant, that the state will not make or give any grant or license, power or authority affecting lands under water in front of said lands, then and in either of such cases, such person or corporation, grantee or licensee, having such grant and license, power or authority, his, her or their being such representative or assignee, and requesting such grant and benefits as in this section mentioned, shall be entitled to said paper so capable of being acknowledged and recorded, and granting the title and benefits aforesaid, on payment of the consideration hereinafter mentioned; and the said commissioners or any of them, with the governor and attorney general for the time being, to be shown by the governor signing the grant, and the attorney general attesting it, shall and may execute and deliver and acknowledge in the name and on behalf of the state, a lease in perpetuity to such grantee or licensee or corporation having such grant, license, power or authority, and to the heirs and assigns of such grantee or licensee, or to the successors and assigns of such corporation, upon his, her or their securing to be paid to the state an annual rental of three dollars for each and every lineal foot measuring on the bulkhead line, or a conveyance to such grantee or licensee or corporation having such grant, license, power or authority, and to the heirs and assigns of such grantee or licensee, or to the successors and assigns of such corporation in fee, upon his, her or their paying to the state fifty dollars for each and every lineal foot measuring on the bulkhead line, in front of the land included in said conveyance; provided, that no corporation to whom any such grant, license, power or authority was given by legislative act as aforesaid, in which provision was made for the payment of money to the treasurer of the state for each and every foot of the shore embraced and contained in the act; nor the assigns of such corporation shall be entitled to the benefits of this section; and provided further, that the said commissioners shall in no case grant lands under water beyond the exterior lines hereby established, or that may be hereafter established, but the said conveyance shall be construed to extend to any bulkhead or pier line further out on said river and bay that may hereafter be established by legislative authority; in case any person or corporation taking a lease under this section, shall desire afterwards a conveyance made upon payment of the said sum of fifty dollars for every such lineal foot, as aforesaid, of the land so desired to be conveyed, the conveyance or lease of the commissioners under this or any other section of this act, shall not merely pass the title to the land therein described, but the right of the grantee or licensee, individual or corporation, his heir, or their heirs and assigns, to exclude to the exterior bulkhead line, the tidewater by filling in or otherwise improving the same, and to appropriate the land to exclusive private uses, and so far as the upland from time to time made shall adjoin the navigable water, the said conveyance or lease shall vest in the grantee or licensee, individual or corporation, and their heirs and assigns, the rights to the perquisites or wharfage, and other like profits, tolls and charges." *Page 639 
The bill alleges that in pursuance of the provisions of the foregoing act, John M. Goetchius, being the owner of lands fronting on the Hudson River which lie above high water mark and in front of which are the lands in question, being lands under water, applied for and obtained a grant on September 25th, 1901, from the Riparian Commission and Foster M. Voorhees, Governor, for the sum of $50, whereas under the terms of the above act, Goetchius should have paid $130,000 for the grant since he was the owner of 2,600 feet frontage of upland. The defendant denies that Goetchius was obliged to pay $50 per lineal foot and contends that by subsequent statutes the Riparian Commissioners, together with the Governor, were empowered to convey such riparian lands upon such terms as they fixed and determined.
The grant in question recited that it was made "Pursuant to an act of the Legislature of said State, approved March 21st, 1871, entitled, c." The pleadings admitted, except as to the amount of the consideration, that the grant was made pursuant to the provisions of the act of 1869. The act of 1871 did not apply to lands under the waters of the Hudson River where the lands in question are located. The act of 1869 applied to the lands under the tidewaters of the Hudson River, New York Bay and the Kill von Kull, lying between Enyard's dock, on the Kill von Kull, and the New York State line. The act of 1871 applied to grants of the State's lands under tidewaters elsewhere than within the territory named in the act of 1869. Fitzgerald v. Faunce,46 N.J. Law 536, 592, 594.
The question as to the right of Goetchius to obtain the grant, which is now sought to be set aside, is not raised in this suit. It appears that he had the right by virtue of his being the successor in title to one, Robert Annett, who, in 1844, was authorized by the legislature "to keep up and maintain wharves, * * *, upon and in front of his said lands, in the same manner as fully to all intents and purposes, as if an act of the legislature had been first passed, authorizing and making it lawful for him or them to build and erect the same." See P.L.1844 p. 210. In McCarter, Attorney-General v. Lehigh ValleyRailroad Co., 78 N.J. Eq. 346, *Page 640 351; affirmed, 86 N.J. Eq. 168, Vice-Chancellor Stevens, in considering the said act of 1869, said:
"Sections 4 and 8 provide for grants to two different classes of persons — section 4 for the class mentioned in section 3, viz., those who already have a grant of lands under water or a license to reclaim or build docks, c., given by prior legislative act, and section 8 for the class of persons who have no such grant or license."
Goetchius was within the class of persons entitled to the grant under section 4 of the act of 1869. Therefore, the only question remaining for consideration is whether or not he was obliged to pay $50 per lineal foot for his grant of 2,600 feet frontage. There is nothing in the pleadings or in the stipulation concerning the value of the lands in question at the time the grant was made. I am, therefore, unable to determine whether the lands conveyed were worth even the $50 which the grantee paid.
After a thorough study of the pertinent statutes and the cases construing them, which I might state required several months of research, I am of the opinion that the grant should not be set aside. It appears that the provisions of section 4 of the act of 1869 remained in effect until 1891. In that year the legislature passed an act (P.L. 1891 p. 213) entitled "A Further Supplement to an act entitled `An Act to ascertain the rights of the state and of the riparian owners in the lands lying under the waters of the bay of New York and elsewhere in the state,' approved April eleventh, one thousand eight hundred and sixty-four." Said act was approved March 20th, 1891, and took effect immediately. Section 4 of said act (R.S. 12:3-24) provides as follows:
"That the riparian commissioners, or a majority of them, together with the governor, shall not hereafter be required to give leases for lands of the state under water, convertible into grants upon payment of the principal sum mentioned therein, but may sell or let any of the lands of the state below mean high-water mark, upon such terms as to purchase money or rental, and under such conditions and restrictions as to time and manner of payment and duration and removal of any lease, the occupation and use of the land sold or leased, and such other conditions and restrictions as the interest of the state may require, as may be fixed and determined by said riparian commissioners, or a majority of them, together with the governor." *Page 641 
Section 5 of said act provides:
"That all acts and parts of acts inconsistent with this act be and the same are hereby repealed, and that this act shall take effect immediately."
I have concluded that the legislature, by means of the act of 1891, repealed the provisions of section 4 of the act of 1869 which act made it mandatory upon the riparian commissioners and the Governor to obtain $50 per lineal foot of land conveyed. From and after the passage of the act of 1891 the riparian commissioners and the Governor were given discretion "as the interest of the State may require" to fix and determine the price to be paid for a grant within the purview of the fourth section of the act of 1869. Up to the time of the enactment of the act of 1891, the only statute which fixed the price to be obtained for riparian grants was section 4 of the act of 1869 and, as above stated, the act of 1869 applied only to lands under the tidewaters of the Hudson River, New York Bay and the Kill von Kull, lying between Enyard's dock, on the Kill von Kull, and the New York State line which territory included the lands in question. The Riparian Act of 1871 (P.L. 1871 p. 44), R.S.12:3-10 and R.S. 12:3-11, which applied to grants of land under the tidewaters elsewhere in this State than within the territory fixed in the act of 1869 (Fitzgerald v. Faunce,supra) empowered the riparian commissioners in their discretion to fix and determine the compensation to be paid for such grants.
In view of the foregoing, I am convinced that the riparian commissioners and the Governor were empowered by the provisions of sections 4 and 5 of the act of 1891 (P.L. 1891 p. 213) to obtain for the grant in question a price to be fixed and determined by them. Since it appears by the terms of the grant itself that $50 was the price so fixed and determined and there being no proof as to the value of the lands conveyed, I am of the opinion that there should be a decree in favor of the defendant Borough of Edgewater. In the case of Attorney-General v. SooyOyster Co., 78 N.J. Law 394, 410, the court said:
"Courts do not, in these cases where the administrative *Page 642 
officers had jurisdiction, review their determination of a question of fact, but interfere only in cases of mistake, fraud, deceit, or misconstruction of the law."
The elements for judicial interference are not present in this case.